IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

| | | |
|---|---|---|
| Al Qosi v. Bush | ) | Case No.  04-CV-1937 (PLF) |
| Al Marri v. Bush | ) | Case No.  04-CV-2035 (GK) |
| Zemiri v. Bush | ) | Case No.  04-CV-2046 (CKK) |
| Abdullah v. Bush | ) | Case No.  05-CV-0023 (RWR) |
| Al Mohammed v. Bush | ) | Case No.  05-CV-0247 (HHK) |
| Al Adahi v. Bush | ) | Case No.  05-CV-0280 (GK) |
| Al Joudi v. Bush | ) | Case No.  05-CV-0301 (GK) |
| Ameziane v. Bush | ) | Case No.  05-CV-0392 (ESH) |
| Batarfi v. Bush | ) | Case No.  05-CV-0409 (EGS) |
| Sliti v. Bush | ) | Case No.  05-CV-0429 (RJL) |
| Kabir v. Bush | ) | Case No.  05-CV-0431 (RJL) |
| Qayed v. Bush | ) | Case No.  05-CV-0454 (RMU) |
| Al Oshan v. Bush | ) | Case No.  05-CV-0520 (RMU) |
| Mammar v. Bush | ) | Case No.  05-CV-0573 (RJL) |
| Al Sharekh v. Bush | ) | Case No.  05-CV-0583 (RJL) |
| Magram v. Bush | ) | Case No.  05-CV-0584 (CKK) |
| Al Daini v. Bush | ) | Case No.  05-CV-0634 (RWR) |
| Hamlily v. Bush | ) | Case No.  05-CV-0763 (JDB) |
| Imran v. Bush | ) | Case No.  05-CV-0764 (CKK) |
| Al Habashi v. Bush | ) | Case No.  05-CV-0765 (EGS) |
| Rahmattullah v. Bush | ) | Case No.  05-CV-0878 (CKK) |

| | | |
|---|---|---|
| Rahman v. Bush | ) | Case No.  05-CV-0882 (GK) |
| Bostan v. Bush | ) | Case No.  05-CV-0883 (RBW) |
| Wahab v. Bush | ) | Case No.  05-CV-0886 (EGS) |
| Basardh v. Bush | ) | Case No.  05-CV-0889 (ESH) |
| Shaaban v. Bush | ) | Case No.  05-CV-0892 (CKK) |
| Sohail v. Bush | ) | Case No.  05-CV-0993 (RMU) |
| Al Karim v. Bush | ) | Case No.  05-CV-0998 (RMU) |
| Al Khalaqi v. Bush | ) | Case No.  05-CV-0999 (RBW) |
| Kahn v. Bush | ) | Case No.  05-CV-1001 (ESH) |
| Hamad v. Bush | ) | Case No.  05-CV-1009 (JDB) |
| Al Hela v. Bush | ) | Case No.  05-CV-1048 (RMU) |
| Zalita v. Bush | ) | Case No.  05-CV-1220 (RMU) |
| Ahmed v. Bush | ) | Case No.  05-CV-1234 (EGS) |
| Aminullah v. Bush | ) | Case No.  05-CV-1237 (ESH) |
| Al Khaiy v. Bush | ) | Case No.  05-CV-1239 (RJL) |
| Alsawam v. Bush | ) | Case No.  05-CV-1244 (CKK) |
| Al Bihani v. Bush | ) | Case No.  05-CV-1312 (RJL) |
| Mohammed v. Bush | ) | Case No.  05-CV-1347 (GK) |
| Hatim v. Bush | ) | Case No.  05-CV-1429 (RMU) |
| Dhiab v. Bush | ) | Case No.  05-CV-1457 (GK) |
| Faraj v. Bush | ) | Case No.  05-CV-1490 (PLF) |
| Al Wirghi v. Bush | ) | Case No.  05-CV-1497 (RCL) |
| Attash v. Bush | ) | Case No.  05-CV-1592 (RCL) |

| | | |
|---|---|---|
| Al Razak v. Bush | ) | Case No.  05-CV-1601 (GK) |
| Rabbani v. Bush | ) | Case No.  05-CV-1607 (RMU) |
| Zahir v. Bush | ) | Case No.  05-CV-1623 (RWR) |
| Albkri v. Bush | ) | Case No.  05-CV-1639 (RBW) |
| Almerfedi v. Bush | ) | Case No.  05-CV-1645 (PLF) |
| Zaid v. Bush | ) | Case No.  05-CV-1646 (JDB) |
| Al Bahooth v. Bush | ) | Case No.  05-CV-1666 (ESH) |
| Sameur v. Bush | ) | Case No.  05-CV-1806 (CKK) |
| Al Harbi v. Bush | ) | Case No.  05-CV-1857 (CKK) |
| Aziz v. Bush | ) | Case No.  05-CV-1864 (HHK) |
| Hamoud v. Bush | ) | Case No.  05-CV-1894 (RWR) |
| Alkhemisi v. Bush | ) | Case No.  05-CV-1983 (RMU) |
| Al Shabany v. Bush | ) | Case No.  05-CV-2029 (JDB) |
| Othman v. Bush | ) | Case No.  05-CV-2088 (RWR) |
| Jamolivich v. Bush | ) | Case No.  05-CV-2112 (RBW) |
| Al Mithali v. Bush | ) | Case No.  05-CV-2186 (ESH) |
| Alhag v. Bush | ) | Case No.  05-CV-2199 (HHK) |
| Nakheelan v. Bush | ) | Case No.  05-CV-2201 (ESH) |
| Al Subaie v. Bush | ) | Case No.  05-CV-2216 (RCL) |
| Ghazy v. Bush | ) | Case No.  05-CV-2223 (RJL) |
| Amin v. Bush | ) | Case No.  05-CV-2336 (PLF) |
| Al Sharbi v. Bush | ) | Case No.  05-CV-2348 (EGS) |
| Zadran v. Bush | ) | Case No.  05-CV-2367 (RWR) |

| | | |
|---|---|---|
| Razakah v. Bush | ) | Case No.  05-CV-2370 (EGS) |
| Al Darbi v. Bush | ) | Case No.  05-CV-2371 (RCL) |
| Al Baidany v. Bush | ) | Case No.  05-CV-2380 (CKK) |
| Said v. Bush | ) | Case No.  05-CV-2384 (RWR) |
| Al Halmandy v. Bush | ) | Case No. 05-CV-2385 (RMU) |
| Mohammon v. Bush | ) | Case No.  05-CV-2386 (RBW) |
| Thabid v. Bush | ) | Case No.  05-CV-2398 (ESH) |
| Al Shareef v. Bush | ) | Case No.  05-CV-2458 (RWR) |
| Al Delebany v. Bush | ) | Case No.  05-CV-2477 (RMU) |
| Al Harbi v. Bush | ) | Case No.  05-CV-2479 (HHK) |
| Ba Odah v. Bush | ) | Case No. 06-CV-1668 (HHK) |
| Nassem v. Bush | ) | Case No. 06-CV-1677 (RCL) |
| Khan v. Bush | ) | Case No. 06-CV-1678 (RCL) |
| Matin v. Bush | ) | Case No. 06-CV-1679 (RMU) |
| Yaakoobi v. Bush | ) | Case No. 06-CV-1683 (RWR) |
| Taher v. Bush | ) | Case No. 06-CV-1684 (GK) |
| Toukh v. Bush | ) | Case No. 06-CV-1687 (ESH) |
| Hakmat v. Bush | ) | Case No. 06-CV-1753 (EGS) |
| Gul v. Bush | ) | Case No. 06-CV-1760 (RMU) |
| Lal v. Bush | ) | Case No. 06-CV-1763 (CKK) |
| Al Zarnouqi v. Bush | ) | Case No. 06-CV-1767 (RMU) |
| Algahtani v. Bush | ) | Case No. 06-CV-1769 (RCL) |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

<u>AND RESPONSE IN CONNECTION WITH RELATED MOTIONS</u>

<u>PRELIMINARY STATEMENT</u>

As explained in Respondents' Motion to Dismiss, the law of this circuit, announced recently in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. denied*, 127 S. Ct. 1478 (Apr. 2, 2007), requires dismissal of this case. *See* Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600. Petitioners in these cases oppose Respondents' motion to dismiss, variously contending that the Court of Appeals' decision in *Boumediene* is not truly final, that "abeying" these actions is more appropriate than dismissing them, that transfer to the Court of Appeals (which could never have had jurisdiction over these cases) is appropriate, or that for other reasons the direction that the Court of Appeals provided in *Boumediene* to dismiss these cases should not be followed. Petitioners' proposed course of action is untenable and without basis in law.

<u>ARGUMENT</u>

**I.    THE LAW OF THE CIRCUIT REQUIRES DISMISSAL OF THESE CASES**

The decision of the Court of Appeals for the District of Columbia Circuit in *Boumediene* requires dismissal of these habeas cases. *See Boumediene*, 476 F.3d at 986, 994. The decision in *Boumediene* is final and is the law of the circuit. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring) ("[o]nce [an] opinion [is] released it [becomes] the law of this circuit"). Indeed, the Court of Appeals has recognized as much by dismissing for lack of jurisdiction other detainees' habeas cases, pursuant to *Boumediene*. *See Kiyemba v. Bush*, Nos. 05-5487, et al. (D.C. Cir. Order of Mar. 22, 2007) (attached as Exhibit D to Resps' Mot. to Dismiss); *Paracha v. Bush*, Nos. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007)

(attached as Exhibit E to Resps' Mot. to Dismiss); *Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order of Apr. 25, 2007). And the Supreme Court's refusal to review *Boumediene* underscores the fact that that decision is final and binding. *See* 127 S. Ct. 1478; *see also Boumediene v. Bush*, ___ S.Ct. ___, 2007 WL 1225368 (2007) (denying petitioners' motion for extension of time in which to file a petition for rehearing of the order denying certiorari and denying petitioners' motion for suspension of the order denying certiorari); *Hamdan v. Gates*, No. 06-1169, ___ S. Ct. ___ (Apr. 30, 2007) (denying cert.). Petitioners, therefore, have no legal grounds on which to postpone dismissal of their habeas cases.

Petitioners argue that it is inappropriate to rely on Judge Henderson's concurrence in *Ayuda*, in which Judge Henderson stated that "[o]nce [an] opinion [is] released it [becomes] the law of this circuit." 919 F.2d at 154. But Judge Henderson's statement was merely an express statement of the reasoning inherent in the majority opinion, which held that because the Court of Appeals had issued a prior opinion deciding that the district court lacked jurisdiction, a later order of the district court should be stayed based on that earlier Court of Appeal opinion, even though (as here) the mandate had not yet issued from that earlier opinion. Thus, *Ayuda* – and not just Judge Henderson's concurrence – stands for the proposition that a decision of the Court of Appeals is binding in the Circuit regardless of whether the mandate has issued. As the Court of Appeals for this Circuit put the matter in another case,

> While law-of-the-case doctrine is a prudential creation of the courts, the law-of-the-circuit doctrine is derived from legislation and from the structure of the federal courts of appeals. Courts of appeals sit in panels, or divisions, of "not more than three judges" pursuant to the authority granted in 28 U.S.C. § 46(c). The "decision of a division" is "the decision of the court." Revision Notes to 28 U.S.C. § 46 (citing *Textile Mills Sec. Corp. v. Commissioner*, 314 U.S. 326 (1941)); *see Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 876 (D.C.Cir.1992) (in banc), *cert. denied*, 507 U.S. 984 (1993). Were matters otherwise, the finality of our appellate

decisions would yield to constant conflicts within the circuit. *Textile Mills Sec. Corp.*, 314 U.S. at 335.

*LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*). If, as the court said in that case, "[o]ne three-judge panel . . . does not have the authority to overrule another three-judge panel of the court," *id.*, this Court certainly lacks the authority to disregard *Boumediene*.

Many of the petitioners try to evade the application of *Boumediene* by relying on a wholesale misreading of *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998). Petitioners argue that *Steel Co.* somehow means that the presence of an arguably nonfrivolous claim on the merits prevents dismissal of a case on jurisdictional grounds regardless of Circuit precedent. Such a reading is simply untenable. Indeed, *Steel Co.* strongly supports dismissal of these cases, because it requires Courts to decide jurisdictional issues *before* merits questions, and requires a court that lacks jurisdiction to dismiss a case forthwith. If Petitioners' reading of *Steel Co.* were correct, the myriad jurisdictional statutes found in the United States Code and the voluminous caselaw on the subject would be meaningless; all that a plaintiff or petitioner would need to do to have a federal court exercise jurisdiction over his or her case would be to state a claim that is not frivolous on its merits.

The unanimous Court in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), explained *Steel Co.* in the following terms:

> In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), this Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits. *Steel Co* rejected a doctrine, once approved by several Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional objections "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." Id., at 93, . Recalling "a long and venerable line of our cases," *id.*, at 94, *Steel Co.* reiterated: "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,'" *id.*, at 94-95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S.

379, 382 (1884)); for "[ j]urisdiction is power to declare the law," and "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" 523 U.S., at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

526 U.S. at 577. Under that long-standing rule, this Court simply lacks the authority to do anything other than to consider its jurisdiction, and then, in accordance with binding circuit precedent, to dismiss these cases.

## II.   THE EXISTENCE OF DTA REMEDIES DOES NOT UNDERMINE THE CONTROLLING NATURE OF *BOUMEDIENE*

Some petitioners contend that that *Boumediene* does not control any case in which the petitioner is pursuing a DTA petition in the Court of Appeals. That argument is wholly without merit. The Court of Appeals held in *Boumediene* that Section 7 of the MCA eliminates federal court jurisdiction over habeas petitions filed by the detainees at Guantanamo Bay. *See* 476 F.3d at 986, 994; *see also Boumediene*, 476 F. 3d at 992 (holding that an alien "without property or presence in this country has no constitutional rights, under the due process clause or otherwise" ), and referred to dismissal of the habeas cases and vacatur of the district court opinions "as the only recourse." 476 F.3d at 994. The proposition that *Boumediene* does not control the cases in which petitioners are exhausting their remedies under the DTA is pure fiction. In denying certiorari, the Supreme Court declined to review the Court of Appeals decision in *Boumediene*, including that Court's conclusion that Section 7 of the MCA requires dismissal of the detainees' habeas cases.[1] Thus, petitioners have no right to pursue their habeas cases, even after they have

---

[1] Moreover, given that the Supreme Court declined to review the *Boumediene* decision, the statement of Justices Kennedy and Stevens accompanying the denial of certiorari cannot plausibly be read, as some petitioners suggest, to mean that they would interpret dismissal of the underlying habeas actions as an "additional step[]" that "prejudice[s] the position of the petitioners." 127 S. Ct. 1478.

pursued their remedies under the DTA.

Nor can this Court find a basis in *Rhines v. Weber*, 544 U.S. 269 (2005), to conclude it has discretion to stay the habeas cases pending exhaustion of DTA remedies. Filing a DTA petition is not merely an exhaustion requirement for these habeas cases, but is the only jurisdictionally proper action that can presently be pursued by petitioners. In contrast, in *Rhines*, the habeas petitioner would have been able to pursue his habeas action in federal court, after exhaustion of remedies in state court, so long as the federal statute of limitations had not run. 544 U.S. at 272-73. The Court held that, in those circumstances, no statute barred the district court from staying petitioner's federal habeas action so that it could be pursued post-exhaustion. *See Rhines*, 544 U.S. at 276 (noting that federal courts' authority to enter stays in habeas-related matters is constrained by applicable statutes).

Here, pursuant to statute, the courts lack jurisdiction over these habeas cases. Accordingly, there is no reason to maintain the cases pending exhaustion of DTA remedies. As the Court of Appeals has acknowledged, dismissal of the habeas cases is the "only recourse." *Boumediene*, 476 F.3d at 994. Thus, there is nothing for the district court to do, except dismiss the cases. *See Paracha v. Bush*, No. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007) (attached as Exhibit E to Resps' Mot. to Dismiss) (remanding to the district court with instruction to dismiss the habeas petitions for lack of jurisdiction).

III.    **TRANSFER PURSUANT TO 28 U.S.C. § 1631 IS NOT AVAILABLE BECAUSE THERE IS NO NEED FOR SUCH A TRANSFER AND THE COURT OF APPEALS WOULD NOT HAVE HAD JURISDICTION OVER A HABEAS CORPUS ACTION**

Nor is transfer of these matters from this Court to the Court of Appeals for this Circuit pursuant to 28 U.S.C. § 1631 available in these cases. The relevant statute provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

"There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992) (citations omitted). To be sure, the "lack of jurisdiction" prong is satisfied in these cases. But the second and third elements are not at all satisfied.

The interest of justice would be disserved by transfer in this case. Anyone who can file a petition under the DTA – as the petitioners in the various Guantanamo Bay habeas cases can readily do, as evidenced not only by the provisions of the DTA itself, but also by the fact that dozens have now done so or announced their intention to do so soon – has no need to have his district court case transferred to the D.C. Circuit. No legitimate purpose would be served by a transfer. *See, e.g., Esposito v. Comm'r*, 208 F. Supp. 2d 44, 46 (D.D.C. 2002) (holding that transfer would not serve the interest of justice because the plaintiff had already filed an appeal in the proper forum); *In re Dep't of Energy Stripper Well Litig.*, 206 F.3d 1345, 1354 (10th Cir. 2000) (holding that transfer was not in the interest of justice because the plaintiff states had had

"ample opportunity to pursue [their] cases in the proper forum" but had consciously chosen to pursue their cases in the Tenth Circuit).

The third requirement for § 1631 transfer, which demands that the transferee court be a "court in which the action or appeal could have been brought at the time it was filed," 28 U.S.C. § 1631, is also not met. The Court of Appeals has not had, and does not have, jurisdiction to consider petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a) (authorizing consideration of applications for habeas corpus by individual circuit judges, but not by courts of appeals); 28 U.S.C. § 2241(e)(1) (as amended by the MCA) (no court may consider application for habeas corpus by alien detained as enemy combatant). Thus, the petitioners' habeas corpus actions could not have been brought in the Court of Appeals at the time they were filed or at any time thereafter, and a transfer would not serve the purpose behind § 1631, which is to aid litigants who were simply "confused about the proper forum for review," *Am. Beef Packers, Inc., v. Interstate Commerce Comm'n*, 711 F.2d 388, 390 (D.C. Cir. 1983).

Nor would a transfer that would preserve current District Court orders authorizing counsel access be appropriate. Such a transfer would conflict with § 1631 and amount to an improper continued exercise of jurisdiction by this Court. Even in cases where § 1631 transfer is available, the terms of § 1631 provide that a transferred case "shall proceed [in the transferee court] as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. That means that if transfer were authorized under § 1631, further proceedings in the Court of Appeals would be governed by procedures appropriate to review in the Court of Appeals, not by the procedures that were imposed by this Court for the purposes of habeas

-7-

corpus litigation.  The Court of Appeals must establish its own procedures, based on the

procedural rights that Congress provided to detainees in the DTA and appropriate to the nature

of the Court of Appeals' review under the DTA.  *See* Mot. to Dismiss at 9–11.

When the D.C. Circuit faced the question of whether to convert the appeals in

*Boumediene* into DTA cases, it instead considered itself constrained to dismiss the cases for lack

of jurisdiction.  *See Boumediene*, 476 F.3d at 994.  Now that it is clear that the District Court

lacks jurisdiction, dismissal – not transfer – is the only appropriate action.  *See Steel Co.*, 523

U.S. at 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only

function remaining to the court is that of announcing the fact and dismissing the cause." (quoting

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869))).

## IV.     THE COURT SHOULD REJECT PETITIONERS' REQUEST THAT THESE CASES BE MAINTAINED FOR THE PURPOSE OF THE COURT CONTINUING TO EXERCISE JURISDICTION REGARDING COUNSEL ACCESS AND ADVANCE NOTICE OF TRANSFER

Many of the Petitioners also want the Court to maintain these habeas cases on the theory

that this would allow the Court to continue to exercise jurisdiction regarding counsel access and

other matters.  They contend that this Court has authority to preserve those orders to protect the

status quo, pending a determination as to the Court's jurisdiction over the habeas petitions.  They

are not correct either as to the nature of the Court's authority in this regard or as to whether their

theory would justify denial of respondents' Motion to Dismiss.

As has been explained, the Court of Appeals has already determined that federal courts

lack jurisdiction over petitioners' habeas cases, *see* 476 F.3d at 986, 994, and the Supreme Court

has declined to review that ruling, *see* 127 S. Ct. 1478.  Accordingly, this Court cannot adopt the

convoluted logic under which it would have the authority to exercise jurisdiction for the purpose

of entering or maintaining its orders.  Neither *United States v. United Mine Workers*, 330 U.S.

258 (1947), on which many of the petitioners rely, nor any other authority supports such logic.

*See United Mine Workers*, 330 U.S. at 291 ("*Until its judgment declining jurisdiction* should be

announced, [the court of appeals] had authority, from the necessity of the case, to make orders to

preserve the existing conditions and the subject of the petition[.]") (emphasis added).

Petitioners cannot effectively claim that their habeas actions must be maintained until this

Court has answered all the questions about DTA proceedings and the scope of its review in order

to preserve potential remedies before this Court and on appeal.  Even if questions remained as to

the scope of proceedings under the DTA, that would provide no basis to maintain habeas cases

so the Court could exercise jurisdiction that it lacks.  The Court of Appeals, in proceeding with

the DTA cases, will answer those questions as necessary.  If petitioners obtain adverse rulings in

their DTA cases, the remedy will be to seek review in the Supreme Court, not to resurrect the

district court habeas cases.

In particular, petitioners ask that the protective order entered in many of these cases

remain in place to ensure counsel access.[2]  To the extent that an issue such as counsel access or

any other appropriate matter is to be addressed, it must be addressed in the Court of Appeals in

the context of properly filed DTA petitions for review of CSRT determinations.  The Court of

Appeals must establish its own procedures, based on any procedural rights that Congress

---

[2] The fact that certain elements of the Protective Order will survive dismissal of these cases does not support petitioners' position in this regard.  Portions of the Protective Order detail how classified and protected information will be handled after termination of the case.  The obligations accepted by petitioners' counsel by signing the Protective Order survive under the terms of that Order, regardless of why the case is ultimately dismissed.  The vitality of those portions of the Protective Order has no bearing on whether this Court retains jurisdiction in light of the *Boumediene* decision.

-9-

provided to detainees in the DTA and appropriate to the nature of the Court of Appeals' review under the DTA. *Cf. Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); *id.* at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals). Indeed, issues relating to the scope and terms of an appropriate protective order and counsel access regime already are being addressed in the Court of Appeals in two pending DTA petition cases, *Bismullah v. Gates*, No. 06-1197 (D.C. Cir), and *Parhat v. Gates*, No. 06-1397 (D.C. Cir), with oral argument scheduled for May 15, 2007.[3]  In any event, petitioners and their counsel may maintain continued access by filing a DTA petition and agreeing to an interim counsel access regime without prejudice to whatever right petitioners have to seek a different regime in the Court of Appeals. *See* Mot. to Dismiss at 10-11.

Further, it is neither necessary nor appropriate that the Court maintain these habeas cases in order to preserve or maintain orders issued in some of the cases that prohibit respondents from transferring petitioners from Guantanamo Bay to another country without thirty days' advance notice to the Court and counsel. As respondents have demonstrated in numerous filings in this Court, in any transfer of a Guantanamo detainee, a key concern is whether the receiving

---

[3] In light of the Court of Appeals' upcoming consideration of various preliminary issues in the DTA litigation, continuation of the district court counsel access regime is not only unnecessary, but such action has the potential to create significant problems of concurrent and conflicting obligations on the parties. In the interests of clarity and comity, the Court should not maintain the district court counsel access regime indefinitely during the pendency of DTA litigation. Instead, the Court should allow the Court of Appeals to establish its own procedures based on any procedural rights that Congress provided to detainees in the DTA.

government will treat the detainee humanely and in a manner consistent with its international obligations; specifically, it is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured.  *See, e.g., Al Darbi v. Bush*, Civ. No. 05-2371 (RCL) Resps' Mem. in Opp. to Pets' Mot. for Prelim. Inj. Requiring Advance Notice of Any Transfer or Removal at 7-9 (Dkt. no. 26) (filing including description of policy of not transferring person to a country when the United States believes it would be more likely than not the person would be tortured).

In addition, as has been explained, the District Court is without jurisdiction in this matter and, specifically, with respect to issues relating to detainee transfers.  As recognized in *Boumediene*, Section 7 of the MCA eliminates jurisdiction not only over habeas actions, but also over all cases "'which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001.'" *See* 476 F.3d at 986-87.  Thus, the MCA expressly bars claims relating to any transfer of a petitioner.  Indeed, the Court of Appeals recently dismissed for want of jurisdiction Guantanamo detainee cases involving advance notice of transfer orders, <u>see</u> Judgment filed Mar. 22, 2007 in *Kiyemba v. Bush*, Nos. 05-5487, *et al.* (D.C. Cir.) (attached as Exhibit D to Resps' Mot. to Dismiss), as well as a case in which a detainee sought to enjoin his proposed transfer from Guantanamo Bay, *see Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order of Apr. 25, 2007); S. Ct. Order of May 1, 2007 (denying motion for injunctive relief)).[4]

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court dismiss

---

[4] Copies of these orders are attached as Exhibit G.

petitioners' habeas cases for lack of jurisdiction.

Dated: May 14, 2007                    Respectfully submitted,

                                       PETER D. KEISLER
                                       Assistant Attorney General

                                       DOUGLAS N. LETTER
                                       Terrorism Litigation Counsel


                                         /s/  Judry L. Subar
                                       JOSEPH H. HUNT (D.C. Bar No. 431134)
                                       VINCENT M. GARVEY (D.C. Bar No. 127191)
                                       JUDRY L. SUBAR (D.C. Bar 347518)
                                       TERRY M. HENRY
                                       JEAN LIN
                                       JAMES J. SCHWARTZ (D.C. Bar No. 468625)
                                       ROBERT J. KATERBERG
                                       NICHOLAS J. PATTERSON
                                       ANDREW I. WARDEN
                                       EDWARD H. WHITE
                                       NICHOLAS A. OLDHAM
                                       JAMES C. LUH
                                       Attorneys
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave., N.W.
                                       Washington, DC  20530
                                       Tel:  (202) 514-4107
                                       Fax:  (202) 616-8470

                                       Attorneys for Respondents